IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SOUTHEAST KANSAS INDEPENDENT
LIVING RESOURCE CENTER, INC.;
RICHARD KNIGHT; AND,
EDWARD REYNOLDS,

    Plaintiffs

vs.            Case No. 05-1096-JTM

CITY OF COLUMBUS, KANSAS,

    Defendant.

MEMORANDUM AND ORDER

   This is an action under the Americans with Disabilities Act, in which plaintiffs alleged that certain public accommodations in the City of Columbus, Kansas are not ADA-compliant. The action was dismissed after the entry of a Consent Order, under which plaintiffs agreed to dismiss their claims in recognition of the City's commitment to make improvements in providing access to persons with disabilities. (Dkt. 17-1).

   The matter is now before the court on the plaintiffs' Motion to Enforce Settlement Agreement. (Dkt. 18). Plaintiffs argue that the City, which announced that modification to curb ramps in Columbus will not be completed until 2016, has violated the Settlement Agreement.

Specifically, the Plaintiffs argue that the delay violates Section 2.5.3 of the Settlement Agreement, which provides:

> Draft Transition Plan B Priority. Repair of curb ramps shall be a high priority. The transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and places of employment, followed by walkways serving other areas.

Prior to their motion, plaintiffs raised the same issue, unsuccessfully from their point of view, by grievance and mediation under the Agreement. After that motion, the court agreed to reopen the case for the limited purpose of addressing this issue (Dkt. 21), and the parties engaged in additional discovery and other proceedings before the United States Magistrate Judge. Upon the completion of these proceedings, the City has recently filed a Response to plaintiffs' motion (Dkt. 39), and plaintiffs a Reply. (Dkt. 40).

The City argues in their Response that the issue is moot or substantially moot because in the interim, after finding an additional source of funding, the City has spent over $100,000 to improve the curb ramps in the downtown business district. The City also argues that the Consent Order should be interpreted in conjunction with the March 22, 2006 "walking tour" the parties undertook of the area. According to the City, the only curbs discussed in conjunction with the Settlement Agreement were those in the downtown business district, and specifically indicated that, given the size and expense of the project, several years could be necessary for its completion. (Dkt. 39 at 3). In addition, the City has supplied evidence that, prior to the adoption of the Transition Plan, it had determined that complete renovation of city curbs would cost approximately $1.1 million, an amount equivalent to one-fourth of the City's gross revenue from all sources. (Dkt. 39-3).

In their Reply, the plaintiffs cite four curb ramps where repairs have not been made, and four other ramps which are allegedly not ADA compliant. With respect to the City's arguments relating to the "walking tour," plaintiffs cite Judge Crow's decision in *Central Kansas Credit Union v. Mutual Guar. Corp.*, 886 F.Supp. 1529 (D. Kan. 1995) for the proposition that the City should be estopped from raising or litigating any defenses it might have claimed in the original law suit.

The court will deny the Motion to Enforce. The plaintiffs' estoppel argument would be valid if the City were indeed attempting to relitigate any of the underlying claims in the original action. Rather, the City's Response explicitly references the additional information regarding the "walking tour" in connection with its contention that the phrase "high priority" in the Settlement Agreement "at the very least is ambiguous" (Dkt. 39 at 7), and accordingly the prior oral negotiations of the parties are relevant to understanding the phrase as used in the Settlement Agreement. As this court has noted:

> Under Kansas law, a written settlement agreement is a contract and is therefore subject to rules of construction that govern written contracts. Construction of a written contract is a matter of law to be determined by the court. The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of a cont[r]act are clear, the rules of construction are not needed, and the intent of the parties is determined from the contract itself. In construing a contract, meaning should be ascertained by examining the document from all corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; and reasonable rather than unreasonable interpretations are favored.

*Pepsi-Cola Bottling Co. of Pittsburg v. Bottling Group*, 07-2315-JPO, at *5, 2009 WL 873020 (D. Kan. March 30, 2009) (citations and internal quotations are omitted).

The plaintiffs, it must be noted, do not argue in their Reply that the Settlement Agreement is unambiguous, and supply no evidence which would rebut the parol evidence submitted by the City regarding the expense of the complete curb renovation project. After reviewing the Settlement

3

Agreement and the materials submitted by the City, the court finds that the Settlement Agreement does not in itself create any enforceable obligations to complete a full curb renovation by any date certain.

Several factors support this conclusion. First, the language used in the Settlement Agreement – that curb repairs should have a "high priority" is inherently ambiguous. Nothing ties the completion of the repairs to any particular calendar schedule. Second, the cited portion of the Settlement Agreement (§ 2.5.3), both by its own heading ("Draft Transition Plan – Priority"), and by its placement under the subheading § 2.5 (which governs only the "*Preparation* of Transition Plan" rather than its *Completion*), directly suggests that the "high priority" is to be understood in the context of giving curb renovation priority among the other ADA renovations called for by the Transition. Third, nothing in the Settlement Agreement references any of the City's other financial responsibilities, such as providing for law enforcement or fire protection services, and accordingly there is no reason to believe that the "priority" created under § 2.5.3 was intended to privilege curb replacement over those other civic requirements. Fourth, the preamble to the Settlement Agreement specifically establishes that "the City of Columbus has demonstrated a commitment to providing persons with disabilities access to programs, services and facilities of the City of Columbus" (Dkt. 17-1 at 1), which further indicates that the undertakings in the Settlement Agreement incorporated a balancing of civic financial responsibilities. Fifth, the court notes that the drafters of the Settlement Agreement could and did provide for specific burdens and deadlines (for example setting an exact amount for attorneys' fees payable to plaintiffs, and a 120-day deadline for the completion of the Transition Plan). In direct contrast, the drafters avoided imposing any comparable specific obligation for the completion of the curb renovations. Sixth, the parol evidence cited by the City also indicates

that the plaintiffs were aware that the completion of the curb renovations was contingent upon the City obtaining additional financing.

Taken collectively, these considerations support the finding that § 2.5.3 of the Settlement Agreement is ambiguous, but under the circumstances of the case it is reasonably construed to require the City to give curb renovations priority with the ADA Transition Plan; the provision does not set forth any enforceable deadline or schedules for the completion of the project.

IT IS ACCORDINGLY ORDERED this 18th day of February, 2010, that the plaintiffs' Motion to Enforce Judgment (Dkt. 17) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE